[Civ. No. 2852.   Fourth Dist.   Aug. 27, 1942.]

MARIE L. McCARTHY, Appellant, v. JAMES MITCHELL et al., Respondents.

Jesse George for Appellant.

Wright, Thomas & Dorman and Leroy A. Wright, II, for Respondents.

BARNARD, P. J.—This is an action to recover four parcels of real property which had been sold to certain of the defendants in a probate proceeding and to quiet title thereto in the plaintiff. From an adverse judgment the plaintiff has appealed. The appellant is the sole devisee and legatee under the will of W. O. Mitchell. He died in San Diego on January 23, 1927, leaving as a part of his estate the real property in question. On February 11, 1927, the public administrator was appointed as administrator of his estate. In the process

of such administration he sold these parcels of real property to various of these defendants, the sales being made on November 23, 1927, November 25, 1927, March 2, 1928, and on September 14, 1928, respectively.

In the meantime, the appellant petitioned for the probate of a lost will of the deceased, which was denied on June 5, 1928. The last will of the deceased was not found until January 10, 1929. A petition for its probate was filed on January 12, 1929, and denied on September 5, 1929, on the ground it should have been filed in the original case. On December 31, 1929, appellant filed another petition for the probate of this will which was denied on January 22, 1930. That order was reversed on appeal on July 16, 1931. (*Estate of Mitchell,* 115 Cal. App. 348 [1 P. (2d) 536].) The will was finally admitted to probate on September 25, 1931, and this appellant was appointed administratrix with the will annexed. However, the public administrator having filed his final account and petition therefor, distribution had been ordered to an alleged brother of the deceased on May 10, 1929, at which time the first petition for the probate of the will was still pending. Apparently, no appeal was taken from that decree of distribution. The administrator was discharged on January 24, 1930.

The present action to set aside these probate sales was not filed until September 15, 1941. The above facts are alleged in the complaint and it is further alleged that at the time the probate sales were made the respective purchasers knew that the deceased ''had executed the aforesaid will to and in favor of plaintiff and that plaintiff was seeking said will and intended to have it presented for probate.'' A demurrer was filed to the second amended complaint setting up, among other things, that it does not state facts sufficient to constitute a cause of action and that it appears on the face of the complaint that the action is barred by the provisions of section 793 of the Probate Code, and by laches. The demurrer was sustained without leave to amend and this appeal followed.

It is not contended that these probate sales were not duly and regularly made. The appellant contends, however, that since it is alleged that the respective purchasers had knowledge of the fact that the appellant claimed that a will existed in which the property was devised to her and that she was searching for it and would present it for probate if and when

it should be found, it must be held that in purchasing the properties they took title thereto in trust for her. The properties were sold in probate proceedings before the will was discovered, two of the sales being made after the court had denied a petition to admit a supposedly lost will to probate. While it is alleged that the purchasers knew that the deceased had executed a will in favor of this appellant, it is not alleged that they knew that this will was still in existence or that it would later be found. In many cases where it is known that a will had been executed at some former time no will is ever found. Not only were these probate sales regular in all respects, but they were not directly affected by the existence or non-existence of a will. There is nothing in the situation which appears to take this case out of the usual rule. Section 510 of the Probate Code provides for the revocation of letters of administration issued on the ground of intestacy, upon the admission to probate of a will of the deceased. The effect of section 525 is to confirm and make valid the acts of the administrator prior to the time his letters are revoked. Similar provisions were in effect at the times here in question.

While the appellant was entitled to follow the proceeds of these sales in the hands of those to whom these proceeds were distributed, the sales were valid and she cannot take the property from purchasers who bought it in good faith and for value from the administrator, who sold it at regular probate sales at a time when such proceedings appeared to be and were valid. (*Thompson* v. *Samson*, 64 Cal. 330 [30 Pac. 980].) So far as disclosed by the complaint these sales would have been perfectly good even if the will had been admitted to probate before distribution was ordered. There may have been undue haste in making distribution after discovery of the will, as the appellant claims. Her real grievance is not that there was anything wrong with the sales of the property, but that the proceeds of those sales were distributed to the wrong person. With this error or wrongful act, whichever it was, the purchasers at these probate sales had nothing to do. It follows that no sufficient reason for setting aside these sales is alleged in the complaint.

A further consideration is that this action was barred by the provisions of section 793 of the Probate Code, which provides that no action for the recovery of property sold by an administrator can be maintained unless it is commenced within three years after the settlement of the final account of

the administrator or within three years after the discovery of any fraud. The complaint alleges that after the appellant was appointed administratrix with the will annexed in September, 1931, she made a search for the person to whom the balance of the estate had been distributed but could not find him at his address in Denver, Colorado, from which he had disappeared. It is further alleged that she thereafter prosecuted an action against this person and others "without success." It is argued that these efforts and the consequent delay explain the tardy filing of this suit.

It is argued that "the respondents became trustees of plaintiff and appellant under section 2224 of the Civil Code" and that "an element of fraud, actual or constructive, is the basis upon which the trust here is founded." If this be true it would seem equally true that the appellant discovered this element of fraud when she found the will, or at least when the will was admitted to probate. However, this action was not brought until ten years later.

It is further argued that any settling of the account of the public administrator was interlocutory in character, that no right of action accrued in appellant's favor until April 12, 1940, when distribution was finally made to her, and that the three-year period did not begin to run until that date, when her final account as administratrix was settled.

It seems to follow from the language used in section 793 that the settlement of the final account referred to as starting the running of the period is that of the administrator who made the sale which it is sought to set aside. In *Dennis* v. *Bint*, 122 Cal. 39 [54 Pac. 378, 68 Am. St. Rep. 17], where it was claimed the administratrix who made the sale had never qualified and that no final account had been approved, the court said: "Our whole scheme for settling the estates of decedents 'looks to a speedy close of administration' . . . In our opinion the administratrix was allowed under the amendment of 1880 a reasonable time in which to obtain settlement of her final account, and that, failing in this, the statute began to run. . . ." It is hardly thinkable that in thus limiting the time for bringing such an action, which affects third persons and the title to lands, it should have been intended to make the starting of the period dependent upon the act of some future administrator who might not even be appointed until many years later, and then possibly to finally wind up some forgotten matter in the estate.

It appears from this complaint that the public administrator filed his final account with a petition for distribution, and that distribution was ordered on May 10, 1929. It not only inferentially appears that this final account was approved, since the public administrator was discharged on January 24, 1930, but as has been held under section 1573 of the Code of Civil Procedure, the predecessor of section 793 of the Probate Code, the three-year statute began to run after a reasonable time in which to obtain a settlement of that account had elapsed. (*Dennis* v. *Bint, supra; Estate of Bryan,* 99 Cal. App. 113 [277 Pac. 1068].) The appellant had a right of action at least upon her appointment as administratrix, no reason appears for the delay of more than ten years, and it also appears that the purchasers at these sales have been prejudiced by such delay in bringing this action. We think the court was justified in holding that the action was barred both by this statute and by laches.

The judgment is affirmed.

Griffin, J., concurred.