[Civ. No. 10124. First Appellate District, Division Two.—July 20, 1936.]

CLAIRE EVERETT et al., Respondents, v. HOWARD BUICK COMPANY (a Corporation) et al., Appellants.

Ross & Ross for Appellants.

George K. Ford, Simpson Finnell, Jr., and Francis N. Foley for Respondents.

SPENCE, J.—This in an appeal by defendants from a judgment in favor of plaintiffs in an action brought to recover damages for the death of Ralph E. Battison, deceased.

The action was originally brought by Charles Matson, as the administrator of the estate of said deceased. ■ The complaint contained the usual allegations regarding the qualifications of said administrator. Said allegations were merely denied for lack of information or belief with respect thereto. This denial was insufficient to create an issue. (*Montgomery* v. *Fidelity & Deposit Co.*, 69 Cal. App. 251 [230 Pac. 993]; *Lampton* v. *Davis Standard Bread Co.*, 48 Cal. App. 116 [191 Pac. 710]; *Saylor* v. *Taylor*, 42 Cal. App. 474 [183 Pac. 843].) ■ The cause proceeded to trial and it was not until after the testimony was closed and the argument of plaintiffs' counsel had commenced, that counsel for defendants asked that the cause be reopened for the purpose of permitting defendants to introduce evidence showing that said Charles Matson had been discharged as administrator of the estate of the deceased prior to the time that the trial had commenced. The motion was denied. Thereafter defendants moved for a directed verdict upon the ground that there had been no proof made regarding the qualifications of the party plaintiff. This motion was also denied. After the return of the verdict, defendants made a motion for judgment notwithstanding the verdict upon the same grounds. During the argument of this motion, leave was requested to substitute the heirs of the deceased in the place of the administrator, which leave was granted. The motion for judgment notwithstanding the verdict was thereupon denied.

Defendants contend that the trial court erred in substituting the heirs in the place of the discharged administrator. In making this contention defendants argue for a strict construction of the provisions of section 385 of the Code of Civil Procedure claiming that the heirs were not the representatives, successors in interest or transferees of the administrator. We deem it unnecessary to enter into an academic discussion of the questions thus raised as defendants con-

cede that the action did not abate and could have been continued by another administrator. This being true and, as an administrator is merely the statutory trustee for the heirs in bringing an action for wrongful death (*Rose* v. *San Diego Electric Ry. Co.*, 133 Cal. App. 646, 651 [24 Pac. (2d) 838]), we believe that the error, if any, in substituting the heirs as plaintiffs in the place of the administrator could not have been prejudicial to defendants.

Defendants further contend that "Erick B. Flippen was not an employee of the Howard Buick Company". This was the claim of the defendant company upon the trial and we assume that it is now contended that the evidence was insufficient to sustain the implied finding of the jury to the contrary. We find no merit in this contention. The testimony showed that Mr. Keough was the manager of the Howard Buick Company in Burlingame; that some time prior to the day in question Mr. Flippen had applied to Mr. Keough for employment selling automobiles for that company on commission; that Mr. Flippen lived in Millbrae and as stated by Mr. Keough, "I was desirous of getting representation up in that district. . . . I told him I would like to get a lot or location up there to handle some used cars and have local representation at Millbrae"; that Mr. Keough checked up Mr. Flippen's references, which were very favorable, and sent word to him to come into the office; that Mr. Flippen reported to Mr. Keough on the morning of the day on which the accident occurred; that on the first occasion as well as on the morning of the accident, these parties held lengthy conversations regarding the employment of Mr. Flippen; at the conclusion of the conversation on the morning of the accident, Mr. Flippen asked for a car to take to Millbrae for the purpose of demonstrating it to some prospects; that Mr. Keough informed him that there was no car available at that particular time but that he would try to have one for him about 3 o'clock in the afternoon; that Mr. Keough then suggested that Mr. Flippen go to the company's used car lot in Redwood City and familiarize himself with the company's stock of used cars; that Mr. Flippen did so and returned to Burlingame in the afternoon; that Mr. Keough then called Mr. Brown, another salesman, and asked him if the company car assigned to Mr. Brown was

available for Mr. Flippen to drive to Millbrae to see some prospects; that some conversation followed between the three in which Mr. Flippen stated that he wanted to "show it that night" to a couple of people up there and Mr. Brown said it was all right if Mr. Flippen would leave his own car for use in case Mr. Brown needed transportation in the meantime; that Mr. Flippen took the car saying he would be back "after dinner"; that Mr. Flippen then went to Millbrae and showed the car to some prospects that evening, the last demonstration being between 9 and 10 o'clock; that the accident occurred at about 11 o'clock while Mr. Flippen was returning to the company's place of business. Mr. Flippen testified that he understood from the conversations that he had gone to work for the company that morning and Mr. Keough admitted "I think I led Mr. Flippen to believe that everything was in order that he might go to work". Mr. Keough further conceded that he did not allow a person to take a car out and demonstrate it to prospects unless such person was employed by the company. All of the foregoing testimony was practically uncontradicted.

In our opinion, the foregoing testimony was sufficient to support the implied finding of the jury to the effect that Mr. Flippen was an employee of the Howard Buick Company and was acting within the scope of his employment at the time the accident occurred. Defendants seem to claim that the employment had not commenced but all that need be said is that it was reasonable for the jury to conclude from the evidence that this was not the fact. Defendants further cite *Barton* v. *Studebaker Corp. of America*, 46 Cal. App. 707 [189 Pac. 1025], and seem to claim that Mr. Flippen was an independent contractor rather than an employee. The facts in the Barton case were quite different from those before us. From the uncontradicted testimony in that case, it affirmatively appeared that the company "had no control" over the means by which the salesman was to perform his work. There was no such affirmative showing here and furthermore it does appear that Mr. Keough indicated to Mr. Flippen not only that he desired to have a representative in Millbrae but also that he desired to have said representative "handle some used cars" for the company on a used-car lot which the company desired to obtain. This reasonably implies something different from the arrangement

made with what may be termed a "free lance" salesman working on a commission basis under conditions such as are shown by the facts in the Barton case. (See *George* v. *Chaplin,* 99 Cal. App. 709 [279 Pac. 485]; *Lowmiller* v. *Monroe, Lyon & Miller, Inc.,* 101 Cal. App. 147 [281 Pac. 433, 282 Pac. 537]; *Chapman* v. *Edwards,* 133 Cal. App. 72 [24 Pac. (2d) 211].)

The only remaining heading in defendants' brief reads "No liability for permitted use of defendant corporation's automobile." This heading relates to the subject of the liability of an owner based solely upon the provisions of section 1714¼ of the Civil Code. We deem it unnecessary to discuss this heading in view of our conclusions hereinabove set forth.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 17, 1936.